IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL ACTION NO. |
| | ) | 2:10-cr-148-WKW |
| BRIAN ONEAL GUICE | ) | [wo] |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Pending before the Court is Defendant's *Motion to Suppress* (Doc. 19, filed Oct. 13, 2010). Defendant Brian Guice ("Guice" or "Defendant") seeks to exclude the physical evidence and statements obtained by law enforcement during two traffic stops conducted on September 9, 2009 and February 24, 2010. After an evidentiary hearing and due consideration of briefs, arguments, exhibits, and applicable law, the Magistrate Judge recommends that the District Court **DENY** the motion to suppress.

### I.  FINDINGS OF FACT

**A.  The Stop on September 9, 2009**

On September 9, 2009, shortly before 10:00 a.m., Troy Police Officers (Narcotics) Eric Ernsberger ("Ernsberger") and Bryan Weed ("Weed") were in an unmarked car watching for drug activity on Brundidge Boulevard. Ernsberger and Weed saw a silver Ford Taurus back up through the intersection of Brundidge and Banks Street and then turn left onto Brundidge. As the Ford passed the officers, they saw the driver was Brian Guice, the subject of previous reports to the Troy Police Department. Ernsberger knew from past contact with Guice that he had no license. The officers turned around, turned

on their blue lights, and began a traffic stop.

Guice pulled into the driveway of a house at the corner of Brundidge and Normal Avenue, while the officers pulled in behind him, blocking the Ford.  Guice left his car and walked toward Ernsberger.  When Ernsberger asked Guice for his driver's license, Guice responded that Ernsberger knew he did not have one.  Weed walked up to the passenger side of Guice's car and saw narcotics in plain view.  As Ernsberger told Guice that he stopped him for backing up through the intersection of Brundidge and Banks, he saw Weed cross his arms at the wrists to form an "X" - the arrest signal.  Ernsberger handcuffed Guice, but did not give a rights warning in accordance with *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), because he did not question Guice.  Weed approached and told Ernsberger that the reason for the arrest was the presence of marijuana in plain view on the front passenger seat of Guice's car.  A search incident to Guice's arrest revealed another small bag of marijuana.  Guice expressed surprise that he was being arrested for "that little bit of work" - a phrase which Ernsberger said was street slang for drugs.

Weed went back to the Taurus to conduct an inventory search.  A packet of marijuana was on top of a plastic Wal-Mart bag laying on the console.  Weed looked inside the Wal-Mart bag and found six small bags of crack cocaine.  Weed also found a firearm in the console.  Weed told Guice he found a firearm and Guice said that there were no bullets in the chamber nor was the magazine pushed in all the way.  The officers had information that Guice sold drugs from the residence adjacent to the driveway at Brundidge and Normal, but Guice gave another location as his home address and Guice's

name was not on the utility records for the house.  Laboratory tests eventually confirmed the confiscated substances were, in fact, 2.36 grams of marijuana and approximately 1 gram of crack cocaine.

At the October 21, 2010 hearing, two residents of the Brundidge Boulevard/Normal Avenue community testified that they knew Guice because he lives at the house at the intersection of Brundidge and Normal Avenue.  Both witnesses saw the stop, the plastic bags, and the gun that officers found and set on the trunk of the car.  Walter Henderson ("Henderson") lives in an apartment at the corner of Brundidge and Banks.  Henderson said that he has known Guice for years and Guice lived at the corner of Brundidge and Normal Avenue.  Henderson was in his yard talking to Guice moments before the stop.  Henderson said he saw Guice back carefully through the intersection before turning left onto Brundidge Boulevard, and that there were no other cars in the road.  Henderson turned to enter his home, but glanced back and saw Guice stopped by the officers.

**B.     The Stop of February 24, 2010**

On February 24, 2010, Troy Police Officer Mark Ross received a call to investigate gunfire citizens heard around 11:37 p.m.  Ross received information that Guice may have been part of the incident and that Guice drove a purple Nissan Maxima or a silver Ford Taurus during the incident.  Ross and other officers began to watch areas they knew Guice to frequent.  While the search for Guice was underway, the surveillance team learned there was an outstanding misdemeanor arrest warrant for Guice issued by the Troy Municipal Court.  Ross received a call that Guice was in the purple Nissan near

his location.  Ross tailed Guice and turned his lights on after Guice gave a left turn signal and pulled into an apartment parking lot at the corner of Banks and Brundidge Boulevard. Other officers came to the area when the stop began.

The video of the stop shows Guice immediately left his car rather than wait for officers to approach him.  Guice left the driver's door open.  Ross was concerned when Guice left his car because he likely had a firearm and was a suspect in the earlier shooting.  Ross first told Guice to get back into his car, but Guice began to talk loudly at the officers and did not obey Ross.  Ross thought there were enough officers to subdue Guice, so he ordered Guice to lay down on the ground.  Though Guice was quickly handcuffed, he continued to ask officers what he had done and why he was under arrest. Officers found plastic bags of cocaine and a Glock firearm in the car.  In celebratory fashion, the officers told Guice that he was going to prison.  Guice was lifted to his feet, whereupon he continued to insist that the car was not his, the cocaine was not his, and the firearm was not his.  He told the officers that he would "bond" out, that his fingerprints were not on the firearm, and that he "knew the law."  Officers read Guice his *Miranda* warnings, but Guice kept talking loudly over the officers.

When Officer Ross returned to police headquarters, he signed the misdemeanor warrant to indicate Guice was in custody.  Ross said he arrested Guice as soon as he left his car because of the outstanding arrest warrant, but that, in any event, he would have taken a "high risk" approach to the situation because of the reports that Guice was reported to be armed and involved in gunfire earlier in the evening.

**C.     Indictment**

On August 17, 2010, the Grand Jury for the Middle District of Alabama returned a five-count indictment against Guice. *See* Doc. 1. Count One charged that, on or about September 9, 2009, within the Middle District of Alabama, Guice did knowingly and intentionally possess with the intent to distribute a mixture and substance which contained a detectable amount of cocaine base (more commonly known as crack cocaine), a Schedule II Controlled Substance; and marijuana a Schedule I Controlled Substance, all in violation of Title 21, United States Code, Sections 841(a)(1). Count Two charged that, on or about September 9, 2010, within the Middle District of Alabama, Guice did knowingly use and carry a silver Taurus PT 945, .45 caliber semi-automatic handgun, during and in relation to the drug trafficking offense charged in Count One, and possessed said firearm in furtherance of the drug trafficking offense, all in violation of Title 18, United States Code, Sections 924(c)(1)(A)(i). Count Three charged that, on or about September 9, 2009, Guice, having been convicted in the Circuit Court of Pike County, Alabama, on or about November 4, 2002, of Unlawful Possession of Cocaine (No. CC 2001-361), a felony punishable by imprisonment for a term exceeding one year under the laws of the State of Alabama, did knowingly possess, in and affecting commerce, a firearm, to wit: one silver Taurus PT 945, .45 caliber semi-automatic handgun, a better description of which is unknown to the grand jury, all in violation of Title 18, United States Code, Sections 922(g)(1). Count Four charged that, on or about February 24, 2010, Guice, having been convicted in the Circuit Court of Pike County, Alabama, on or about November 4, 2002, of Unlawful Possession of Cocaine (No. CC

2001-361), a felony punishable by imprisonment for a term exceeding one year under the laws of the State of Alabama, did knowingly possess, in and affecting commerce, a firearm, to wit: one black Glock, model 23, 40 caliber handgun, a better description of which is unknown to the grand jury, all in violation of Title 18, United States Code, Sections 922(g)(1).  Count Five charged that, or about February 24, 2010, Guice did knowingly and intentionally possess with the intent to distribute a mixture and substance which contained a detectable amount of cocaine base (more commonly known as crack cocaine), a Schedule II Controlled Substance; all in violation of Title 21, United States Code, Sections 844(a).

Guice moves to suppress the evidence against him because he alleges the searches violated the Fourth and Fifth Amendments to the United States Constitution, and the consequence of those alleged violations should be suppression of any evidence seized and statements made by Guice.  The Court heard argument and took evidence from the parties at a hearing on October 21, 2010.  Post-hearing briefs were also submitted and considered.  *See* Docs. 37, 40, and 43.

## II.  DISCUSSION AND ANALYSIS

The Fourth Amendment guards "[t]he right of the people to be secure in their person, houses, papers, and effects, against unreasonable searches and seizures."  U.S. CONST. AMEND. IV.  Warrantless searches and seizures are per se unreasonable unless an exception applies.  *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967) (citations omitted).  The exclusionary rule is "a judicially created remedy designed to safeguard Fourth Amendment rights" by prohibiting the use of

illegally seized evidence in criminal prosecutions. *United States v. Calandra*, 414 U.S. 338, 348, 94 S.Ct. 613, 620, 38 L.Ed.2d 561 (1974). The rule is designed to deter misconduct by law enforcement by banning evidence obtained in violation of the Fourth Amendment. *United States v. Virden*, 488 F.3d 1317, 1322 (11th Cir. 2007) (citing *Nix v. Williams*, 467 U.S. 431, 442-43, 104 S.Ct. 2501, 2508, 81 L.Ed.2d 377 (1984)). Guice moves the Court to apply the exclusionary rule because he avers the evidence and statements were obtained in violation of the Fourth Amendment.

Guice's challenges the validity of the stop by Ernsberger and Weed. He contends that backing safely through the intersection did not constitute a traffic violation, but instead, the September 9, 2009 stop rests upon a mistake of law by the officers. Under *United States v. Chanthasouxat*, 342 F.3d 1271 (11th Cir. 2003), "an officer's mistake of law cannot provide the objective grounds for reasonable suspicion or probable cause required to justify a traffic stop." *Chanthasouxat*, 342 F.3d at 1277. The evidence in that case was excluded because it was all traceable to the Fourth Amendment violation, *i.e.*, the mistake of law which prompted officers to begin a stop. *Id.* at 1280-81.

Guice submits he did not commit a traffic violation because ALA. CODE § 32-5-72(a) provides "[t]he driver of a vehicle shall not back the same unless it shall reasonably appear that such a movement can be made with safety and without interfering with other traffic." Henderson said there was no other traffic near Brundidge and Banks when he and Guice ended their conversation and Guice began to back up on Banks Street. The numerous photographs of the area which were introduced by Guice all show a quiet, residential area, and it is reasonable to believe that during a weekday at mid-morning

there was little to no traffic.  Another fact which favors Guice is the intersection has a three-way, not a four-way stop.  Brundidge dead ends at, and forms an intersection with Banks Street.  Ernsberger's testimony made clear the initial reason for the stop was the *per se* traffic violation which occurred when the car backed up.  Given the plain reading of ALA. CODE § 32-5-72(a), it is clear that simply backing up in a roadway does not violate the law if it reasonably appears that it can be done safely and without interfering with other traffic.  The Court finds that Ernsberger was mistaken as to the law when he stopped Guice simply because Guice backed through the intersection.  Without more, the stop violates the Fourth Amendment and exclusion is appropriate under *Chanthasouxat*.

Unfortunately for Guice, there is more.  Even though Guice prevails in his argument for exclusion under *Chanthasouxat*, Ernsberger's firsthand knowledge that Guice did not have a license to drive is ample cause to justify the stop.  Longstanding precedent clearly states that the "Fourth Amendment requires that searches and seizures be reasonable.  A search or seizure is ordinarily unreasonable in the absence of individualized suspicion of wrongdoing." *City of Indianapolis v. Edmond*, 531 U.S. 32, 37, 121 S.Ct. 447, 451, 148 L.Ed.2d 333 (2000).  The Supreme Court has long recognized the privacy rights motorists retain when operating their vehicles, and stated "[w]ere the individual subject to unfettered governmental intrusion every time he entered an automobile, the security guaranteed by the Fourth Amendment would be seriously circumscribed." *Delaware v. Prouse*, 440 U.S. 648, 662-663, 99 S.Ct. 1391, 1401, 59 L.Ed.2d 660 (1979).  Notwithstanding Guice's right to be free from unreasonable search and seizure in his car, the Supreme Court in *Prouse* also explained:

> Accordingly, we hold that except in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment.

*Id.* at 663, 99 S.Ct. at 1401.

Ernsberger knew that Guice did not have a license.  Guice admitted as much when he told Ernsberger that "you know I don't have a license" immediately upon exiting the vehicle.  Ernsberger's knowledge that Guice did not have a license provides an "articulable and reasonable suspicion" to stop and investigate.  *Id.*  When Weed went to the front passenger-side door, he saw a small plastic bag of marijuana on the seat of the car.  Weed's extensive training and four years of experience in the Narcotics Division of the Troy Police Department were a firm basis for Weed to conclude the substance was marijuana.  Thus, it was in the course of investigating a driver who was known to be or at the very least suspected of being unlicensed driver that Weed saw an illegal substance in Guice's car.  "The plain view doctrine permits a warrantless seizure where (1) an officer is lawfully located in the place from which the seized object could be plainly viewed and must have a lawful right of access to the object itself; and (2) the incriminating character of the item is immediately apparent." *United States v. Smith*, 459 F.3d 1276, 1290 (11th Cir. 2006) (citations and internal quotations omitted); *see also United States v. Purcell*, 236 F.3d 1274, 1277 (11th Cir. 2001) ("The officer may seize any contraband, including weapons, in plain view.").

The Supreme Court described *Whren v. United States*, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), as a case which "involved a traffic stop as the prelude to a plain-view sighting and arrest on charges wholly unrelated to the basis for the stop." *Id*. at 812, 116 S.Ct. at 1773. *Whren* applies to the instant case because the testimony clearly establishes Ernsberger had probable cause to believe Guice was driving without a license, and during the course of the stop, Weed saw marijuana. *See also Georgia v. Randolph*, 547 U.S. 103, 118, 126 S.Ct. 1515, 1525, 164 L.Ed.2d 208 (2006) ("And since the police would then be lawfully in the premises, there is no question that they could seize any evidence in plain view or take further action supported by any consequent probable cause."). The stop for reasonable suspicion, plain view sighting of marijuana, and arrest of Guice for possession of marijuana are all valid under the facts presented to the Court.

Guice claims the stop occurred at his residence, and therefore Weed had no justification to enter the property and look into his car, nor the right to search the car because it was not in a public roadway. Guice argues that these circumstances override the operation of the plain view doctrine because Weed was not lawfully on the property and did not have a lawful right of access to the car. *Horton v. California*, 496 U.S. 128, 137, 110 S.Ct. 2301, 2308, 110 L.Ed.2d 112 (1990). Though Guice emphasizes that the Government bears the burden of proving all factual matters relevant to its prosecution of its case against him, the arguments which relate to his place of residence must fail. Guice gave Ernsberger as his home address one different than the one where Weed found the narcotics in plain view. Weed also said that he checked the utilities for that address and the utilities do not list Guice on the account.

Officers had reports that Guice sold drugs from that location, but such activity does not make it his residence. Guice presented witnesses who stated that they knew him to live there, but he did not support his claim with documentation of a lease, mortgage, utilities, bank statement, or any other indication that he was at his own residence or more than a frequent visitor. Even if Guice did reside there, "[i]t is well established that officers conducting a traffic stop may take such steps as are reasonably necessary to protect their personal safety." *Purcell*, 236 F.3d at 1277 (citation omitted). Such steps include a protective search of the driver, passengers, and the vehicle. *Id.* Weed was checking for any threat to the officers' safety, such as a passenger who was undetected, but who may still have posed a threat. Even though Ernsberger made a mistake of law about unlawful backing, his subjective knowledge and suspicions of Guice's unlicensed status provide probable cause for the stop. As the stop was valid on alternative grounds, there are no grounds for the suppression of evidence or statements which resulted therefrom.

Guice argues that officers lacked probable cause to search his vehicle on February 24, 2010. Officer Ross had two reasons to find Guice on February 24, 2010 – Guice was a suspect in his investigation of gunfire and Ross received information that the Troy Municipal Court had an outstanding warrant to arrest Guice. Though counsel for Guice questioned Ross as to whether he knew Guice had in fact been arrested on that warrant already, he concedes that the proof for the prior arrest, and the correlating invalidity of the warrant, was lacking. See *Herring v. United States*, 129 S.Ct. 695 (2009) (exclusionary rule does not apply when officers have good faith belief that warrant is

valid, and failure to remove warrant from police records is the result of isolated negligence attenuated from the arrest.).  Guice's habit of leaving his car and immediately engaging the police in conversation again worked against him, as his belligerent behavior and reported involvement in gunfire caused the officers to immediately handcuff him.  Even though Ross said these factors prompted him to take a high risk approach to apprehending Guice, Ross still had a valid warrant to arrest Guice.

Guice argues that a search of his vehicle was improper under *Arizona v. Gant*, 129 S.Ct. 1710 (2009), because he was in custody and unable to access his vehicle.  The car Guice was driving would have been inventoried pursuant to his arrest under the Troy Police Department's Impounded Vehicle Inventory policy (Def. Ex. 11).  The Troy Police Department policy authorizes an inventory of a vehicle when its driver, such as Guice, is put under arrest.  Further, Guice left his car door open, and officers could see small plastic bags of narcotics.  Even without a warrant for Guice's arrest, the presence of narcotics in plain sight provides probable cause for an arrest, and likewise, a search incident to arrest.  Guice has not shown, nor does the Court see, any grounds to suppress the evidence seized from Guice on February 24.  Furthermore, the officer had the right to close the door and then secure the car from vandalism or theft whether or not they chose to conduct an inventory.  Any effort to secure the car would lead to the inevitable discovery of the narcotics which were in plain view.

### III.  CONCLUSION

Pursuant to the foregoing findings and conclusions, it is the **RECOMMENDATION** of the Magistrate Judge that Defendant's *Motion to Suppress*

(Doc. 19) be **DENIED**.

It is further **ORDERED** that the parties shall file any objections to the said Recommendation not later than **November 17, 2010.** Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

DONE this 3rd day of November, 2010.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE